In re JOHN W. FARLEY & CO.

FT. DEARBORN NAT. BANK OF CHICAGO et al. v. GALLAGHER.

(Circuit Court of Appeals, Seventh Circuit. October 5, 1915.)

Nos. 2204, 2205, 2258, 2263.

1. BANKRUPTCY ⚙══440—REVIEW OF PROCEEDINGS—APPEAL OR PETITION TO REVISE.

A referee in bankruptcy authorized the trustee of a firm of contractors to complete a contract and to borrow money from a bank; the order providing that the bank should have a first lien and prior claim upon the property of the bankrupt, subject only to the costs of administration of the estate. On final accounting by the trustee, the referee ordered a balance in the trustee's hands after payment of fees and expenses to be paid pro rata to unpaid laborers and materialmen to the exclusion of the bank. On appeal to the District Court, it approved the referee's report as to the rights of the bank, reversed his order so far as it allowed the materialmen to prorate with the laborers, and ordered the entire fund distributed pro rata to the laborers. *Held*, that the several orders of the District Court were proceedings in bankruptcy, and not plenary, and the mode of review was by an original petition to revise and review, and not by appeal.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915; Dec. Dig. ⚙══440.

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. BANKRUPTCY ⚙══348—CONTINUING BUSINESS—PRIORITY OF PAYMENT— "COSTS OF ADMINISTRATION."

The "costs of administration," to which the claim of the bank was subordinated, was not limited to court costs, but included the expenses attending the execution of those orders of the court entered with refer-

ence to the contract, and the laborers and materialmen were entitled to payment in preference to the bank.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 536; Dec. Dig. ☞348.

For other definitions, see Words and Phrases, First and Second Series, Costs of Administration.]

3. BANKRUPTCY ☞348—CONTINUING BUSINESS—PRIORITY OF PAYMENT.

No statutory or other special lien having been perfected, the laborers were not entitled to any preference over the materialmen.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 536; Dec. Dig. ☞348.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Kenesaw M. Landis, Judge.

In the matter of John W. Farley & Co., bankrupts. To review an order of the District Court concerning the disposition of a balance in the hands of Joseph P. Gallagher, trustee, the Ft. Dearborn National Bank of Chicago and another appeal and bring petitions to review and revise. Appeals dismissed. Decree affirmed in part, and reversed in part, on the petitions to revise.

By agreement of parties the above four cases were heard together upon the record filed in No. 2205. Cases Nos. 2205 and 2263 are on appeals from the District Court. Cases Nos. 2204 and 2258 are on original petitions to review and revise. By order of court, on stipulation filed, the printing of the records in all but case No. 2205 was waived. From that record it appears that John W. Farley & Co., partners, contracted with the Universal Construction Company to dig a portion of one of the public sewers of the city of St. Louis, Mo. After completing a section of the sewer, the partnership was adjudged a bankrupt, and one Joseph P. Gallagher was elected trustee. On January 8, 1912, upon the filing of the petition of the trustee, setting out that great advantage would result to the estate were he empowered to complete the work, and asking for such power, and for power to issue receiver's certificates for the purpose of raising funds with which to prosecute the work, such authority was granted by the referee. The order of the referee provided that the trustee have leave to borrow of the Ft. Dearborn National Bank of Chicago the sum of not exceeding $10,000, for which loan said bank should have a "first lien and prior claim to every other lien or incumbrance thereon, and, subject only to the costs of administration of this estate, for such sum so loaned, together with interest from the date of said loan at the rate of 6 per cent., upon all the property, estate, assets, and effects of said bankrupts now in the possession of the trustee of this estate or hereafter to come into his possession, including the moneys due said estate on said contract and to become due thereon by reason of the carrying on of said work by said trustee in bankruptcy," and the trustee was at the same time ordered to make monthly reports of his acts in the premises. Thereafter, and on May 17, 1912, on the further request of the trustee, like leave was given the trustee to borrow a further sum of $5,000 from said bank upon like conditions, and again, on June 11, 1912, the trustee filed his petition, setting out the insufficiency of funds to complete said work by reason of floods and other drawbacks, and was authorized to borrow a further sum of $12,500 from said bank upon like terms and conditions. Thereafter, and on June 28, 1912, the trustee asked and received permission to borrow from said bank the further sum of $10,000, upon the same terms and conditions. All of said loans were completed, and the money, aggregating $37,500, was received by said trustee. Of this amount only $1,000 has been repaid.

On final accounting by the trustee, the referee found and reported a balance on hand, after marshaling all the assets and paying referee's and at-

torney's fees and expenses and stenographer fees, amounting to $6,394.65. This amount he ordered paid pro rata upon the sums due for labor and material furnished to said trustee for and used by him in the construction of said sewer, as costs of administration, to the exclusion of the claim of said bank. From this order both the bank and the labor claimants carried their several grievances to the District Court for review. That court approved the referee's report as to the rights of the bank, reversed the order of the referee so far as it allowed the materialmen to prorate with the laborers, and ordered the entire fund on hand distributed pro rata upon the labor claims, which exceeded the said sum to be distributed. To this order the bank and certain materialmen duly excepted. The bank and one Gruner & Bros. Lumber Company, a materialman, having a claim for $2,635.64, bring said matters to this court.

E. Carl Tourje, of Chicago, Ill., for appellant Ft. Dearborn Nat. Bank.

Nicholas R. Jones, of Chicago, Ill., for appellant Philip Gruner & Bros. Lumber Co.

George W. Brown, of Chicago, Ill., for appellee.

Before BAKER, KOHLSAAT, and MACK, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). [1] The several orders of the District Court were clearly proceedings in bankruptcy, and not plenary. Tefft v. Munsuri, 222 U. S. 114, 32 Sup. Ct. 67, 56 L. Ed. 118; Coder v. Arts, 213 U. S. 234, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008; Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986. Therefore the proceedings should be by original petition to review and revise.

[2] The main question presented is the construction to be placed upon the term "costs of administration," to which the several orders of the court authorizing the loans subjects them. The term cannot be limited to court costs, which would cover practically all the items conceded by appellant. It must therefore refer to all the expenses attending the execution of those orders of the court entered with reference to the furnishing of the contract asset of the bankrupt. Farmers' Loan and Trust Co. v. Stuttgart St. R. R. Co. (C. C.) 106 Fed. 565. Had the trustee paid cash for the material and labor invested in carrying on the work of completing the sewer, no question could or probably would have been raised. The mere fact that the trustee failed to pay as he should have done, had he funds so to do, does not alter the situation. The money on hand constituted a fund which should have been distributed, and should be treated as belonging, to the laborers, and, as we think, the materialmen, pro rata. It was obtained from the bank for that purpose. We regard these claims as just as much costs of administration under the facts of this case as would be the feed for stock under the receiver's care or the housing of perishable property. The bank is in the position of one loaning money to a trustee or receiver for a distinct purpose, and then seeking to reclaim it and prevent the application of it. It claims to have furnished all this fund, and it did; but it is not therefore entitled to recover it contrary to the purpose for which it advanced it. The controversy between the bank and the other claims, we think, grows out of the use of the term "costs of administration," which might seem, off-hand, to limit the term in a sense to taxable court costs in an ordinary case.

In the case of Anderson v. Condict, 93 Fed. 349, 35 C. C. A. 335, we held that, where the lien of the receiver's certificates was upon all the property and the proceeds thereof, and net income of the railroad in the receiver's hands, "after the payment of operating expenses and costs of administration," a claim for personal injuries was prior to the lien of the certificates, even as against the corpus of the property. The language here employed is, under the circumstances of the present case, the equivalent of that used in defining the limitation upon the lien of the certificates in the case just cited, and the argument of that opinion is applicable here. Undoubtedly the holders of the certificates must be charged with knowledge of the character and uncertainty of the undertaking to complete the said sewer and to have assumed all the vicissitudes of the situation. It was held in Pusey & Jones v. Penn. Paper Mills (C. C.) 173 Fed. 634, that expenses of construction work upon a mill would precede receiver's certificates, even when expressly made a first lien, as being expenses incurred in preserving the property upon which the certificates were secured.

[3] We concur in the finding of the referee that the labor and material claims should first be paid pro rata out of the funds in the trustee's hands, and, that fund being inadequate to satisfy said claims, the certificate holders will take nothing therefrom. We know of no rule of law which would give the labor claimants any preference over the materialmen under the facts of this case. No statutory or other special liens were perfected. As above stated, both classes of claims are held to be costs of administration and on an equal footing when furnished under the same circumstances.

The decree of the District Court in case No. 2204, in so far as it holds the lien of the bank to be subject to the payment of labor claims, is affirmed. As to the case of Gruner & Bros. Lumber Company, case No. 2258, the decree is reversed, with direction to examine farther into that claim to ascertain whether it has been paid and discharged in part or in whole since the decree therein was entered, and if the court shall find any sum still remaining due from the trustee to said Gruner & Bros. Lumber Company, then to cause distribution from the said balance held by him for distribution, to be made thereon to said Gruner & Bros. Lumber Company pro rata with said labor claims; otherwise, to distribute said balance pro rata between the labor claimants. In causes Nos. 2205 and 2263, the appeals are dismissed.